(No. 2482—

Ted Johnston, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed November 9, 1937.*

John O. Cowan, for claimant.

Otto Kerner, Attorney General; Glenn A. Trevor, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

On May 19th, 1934, and for one or two days prior thereto, the claimant, Ted Johnston, was employed by the State of Illinois as a laborer in the Division of Highways, and was

working on S. B. I. Route No. 146 near Grantsburg. He worked nine hours a day, and was paid forty cents per hour.

On said 19th day of May, 1934, about two o'clock P. M., while engaged in unloading posts from a truck, the claimant apparently collapsed, and claims to have received a sunstroke or heat stroke. He was immediately taken to the office of Dr. J. L. Jackson at Vienna, Illinois, and at that time had a temperature of 105°, and was in a semi-conscious condition. Dr. Jackson continued to treat him for several days, and claimant was confined to his bed for two weeks after the accident. After two weeks he was able to be up and around.

Claimant contends that he is wholly and permanently disabled, but the record shows that he worked for a number of different employers for short intervals after May 19th, 1934; also that he was on police duty for the City of Vienna from October 20th, 1934 to January or February, 1936; also that he worked for other employers, including the Division of Highways, for short periods after he left the police force. The record also shows that he sustained a heat stroke in 1930 while in the employ of the Jaickes Construction Company.

Counsel seems to have taken it for granted that claimant suffered a heat stroke, but the evidence on that question is far from satisfactory.

The question as to whether a heat stroke constituted an accidental injury arising out of and in the course of the employment, was considered by our Supreme Court in the case of *City of Joliet* vs. *Ind. Com.*, 291 Ill. 556. In that case the court said (p. 558):

"The heatstroke occurred in the course of the employment, and there was evidence from which the commission might reasonably conclude that it arose out of the employment. The man was overcome by the heat. In his employment, and because of it, he was exposed to a degree of heat beyond the ordinary temperature of the day."

The court there held that under the facts there in evidence, the heat stroke constituted an accidental injury which arose out of and in the course of the employment.

In the case of *Consumers Co.* vs. *Ind. Com.*, 324 Ill. 152, the employee suffered injuries as the result of frost bite, and contended that such injuries arose out of and in the course of his employment. The underlying principles of law are the same, whether the injuries result from exposure to excessive heat or from exposure to excessive cold. In the Consumers

Co. case the question was carefully considered and the authorities reviewed. In arriving at its conclusions, the court there said (page 155):

"The question in dispute is whether the injuries suffered by defendant in error arose out of his employment. Injuries resulting from exposure to weather conditions, such as heat, cold, ice, snow or lightning, are generally classed as risks to which the general public is exposed and not within the purview of workmen's compensation Acts, although the injured person, at the time he received his injury, may have been performing duties incident to and in the course of his employment. The rule is generally recognized, however, that if an employee, because of his duties, is exposed to a special or peculiar danger from the elements,—a danger that is greater than that to which other persons in the community are subjected,—and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident arising out of and in the course of the employment within the meaning of workmen's compensation Acts. If the character of the employment is such as to intensify the risks that arise from extraordinary natural causes, an accident under such circumstances is one arising out of the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. If the accident, under the circumstances of the employment, was merely a consequence of the severity of the elements, to which persons in the locality, whether so employed or not, were equally exposed, it is not compensable."

Under the rule laid down in the Consumers Company case, it devolves upon the claimant to prove that because of his duties, he was exposed to a special or peculiar danger from the elements, a danger which was greater than that to which other persons in the community are subjected.

The only evidence in the record regarding climatic conditions was that it was awful hot, about 98° or 100°. There is nothing in the record to show just where the claimant was working, or to show conditions at the place of work, or to show that it was any hotter where he was working, than it was in any other place in that community. Under the evidence in the record, claimant has not established the fact that he sustained an accidental injury which arose out of his employment.

Even if he had established the fact of an accidental injury arising out of and in the course of his employment, he still has failed to establish his right to an award under the terms and provisions of the Workmen's Compensation Act for any permanent disability.

Undoubtedly he was temporarily totally disabled for some period of time, but aside from the two weeks during which he was confined to his bed, the period of such disability does not appear in the evidence. He makes no claim for a specific loss, but does claim that he is totally and permanently disabled. Such claim, however, is not supported by the evidence. If there is any permanent disability, it is a permanent partial disability.

Section 8-D of the Compensation Act provides that in case of permanent partial disability the claimant shall "receive compensation subject to the limitations as to time and maximum amounts fixed in paragraphs B and H of this section, equal to fifty percentum of the difference between the average amount which he earned before the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident."

As the record now stands, there is no evidence as to claimant's earnings or his ability to earn after the accident, and consequently there is nothing from which the amount of an award for any permanent disability could be computed, if claimant were entitled thereto.

Award denied. Under the provisions of Sec. 19-B of the Compensation Act, petition for review may be filed within 15 days.